y

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CESAR PARDO-PENA,

           Plaintiff,

   v.

RONALD SPECTOR et al.,

           Defendant.

Case No. 2:20-cv-03562-MAA

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT (ECF NOS. 189, 190, 259)**

## I.   INTRODUCTION

On April 17, 2020, Plaintiff Cesar Pardo-Pena ("Plaintiff") filed a Complaint alleging violations of Title VIII of the Civil Rights Act, the Fair Housing Act ("FHA"). (Compl., ECF No. 1.) Plaintiff filed the currently-operative Third Amended Complaint ("TAC") on March 19, 2021. (TAC, ECF No. 187.)

On March 22, 2021, Defendants LB Property Management, Inc. ("LBPM"); Robert Lopata; Greg De Rubeis; Brandon Stein; Brian Theobald, Angelica Chacana; and Sharyn Grose (collectively, "Defendants") filed a Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment ("Motion," ECF No. 190-1), along with a Notice of such Motion (ECF No. 190); Separate Statement of Undisputed Facts ("SSUF") (SSUF, ECF No. 190-2); Request for

1   Judicial Notice ("RJN") (Defs.' RJN, ECF No. 190-3); and Declaration of Zhen
2   Yang (Tommy) (ECF No. 190-4).[1]

3       After all parties consented to proceed before U.S. Magistrate Judge Maria A.
4   Audero for all further proceedings, the case was transferred to this Court's calendar
5   on April 22, 2021.  (ECF No. 207–08.)

6       As Defendants' evidence did not properly support the Motion's assertions of
7   fact, the Court gave Defendants an opportunity to provide adequate supporting
8   materials.  *See* Fed. R. Civ. P. 56(e)(1) ("If a party fails to properly support an
9   assertion of fact . . . the court may . . . give an opportunity to properly support or
10  address the fact."); Judge Virginia A. Phillips & Judge Karen L. Stevenson, <u>Rutter</u>
11  <u>Practice Guide: Federal Civil Procedure Before Trial, California & Ninth Circuit</u>
12  <u>Edition</u> § 14:95.4 (Apr. 2021 update) ("FRCP 56 does *not* authorize *denial* of a
13  summary judgment motion solely for failure to provide adequate supporting
14  materials.  Rather, the Rule seems designed to encourage supplementing the motion
15  papers to present a proper record wherever possible.").  On July 27, 2021,
16  Defendants filed an Amended Notice of Motion for Summary Judgment (ECF No.
17  259); Declaration of David M. Florence (ECF No. 259-1); Declaration of Angelica
18  Chacana (ECF No. 259-2); Amended Request for Judicial Notice (Defs.' Am. RJN,
19  ECF No. 260); Notice of Lodgment ("NOL," ECF No. 261); and Amended Separate
20  Statement of Undisputed Facts (ECF No. 262).

21      On August 24, 2021, Plaintiff filed an Opposition to the Motion (Opp'n, ECF
22  No. 264-1), along with a Notice of such Opposition (ECF No. 264); Separate
23  Statement of Genuine Disputes of Fact ("SSDF," ECF No. 264-2); Request for
24  Judicial Notice (Pl.'s RJN, ECF No. 264-3); and Declaration of Cesar Pardo-Pena
25  (ECF No. 264-4).  On September 7, 2021, Defendants filed a Reply (Reply, ECF

26

---

27  [1] Defendants filed their Motion for Summary Judgment twice on March 22, 2021.
28  (*See* ECF Nos. 189, 190.)  As the first Motion appears to be an incomplete
    duplicate of the second Motion, the Court addresses only the second Motion.

No. 267); Opposition and Objection to Plaintiff's Request for Judicial Notice (Obj. to Pl.'s RJN, ECF No. 268); Objection to Declaration of Cesar Pardo-Pena and Attached Evidence (ECF No. 269); and Response to Plaintiff's Separate Statement of Undisputed Facts (ECF No. 270).

The Motion is appropriate for resolution without a hearing.  *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  For the reasons stated below, the Court DENIES the Motion.

## II.   REQUESTS FOR JUDICIAL NOTICE

### A.   Requests

Defendants request the Court take judicial notice of the following documents attached as Exhibits to their Notice of Lodging:

- Exhibit 3: July 25, 2016, Request for Civil Harassment Restraining Orders, Form CH-100, Cesar Pardo-Pena against Eric Aguilar, Los Angeles Superior Court, Case No. LS028278 ("*Aguilar I Action*").
- Exhibit 4: November 9, 2016, Order, *Aguilar I Action*.
- Exhibit 5: July 29, 2016, Request for Civil Harassment Restraining Orders, Form CH-100, Eric Aguilar against Cesar Pardo-Pena, Los Angeles Superior Court, Case No. LS028306 ("*Aguilar II Action*").
- Exhibit 6: November 9, 2016, Order, *Aguilar II Action.*
- Exhibit 7: December 5, 2016, Request for Civil Harassment Restraining Orders, Form CH-100, Cesar Pardo-Pena against Eric Aguilar, Los Angeles Superior Court, Case No. LS028854 ("*Aguilar III Action*").
- Exhibit 8: February 2, 2017, Order, *Aguilar III Action*.
- Exhibit 9: April 17, 2017, Request for Civil Harassment Restraining Orders, Form CH-100, Cesar Pardo-Pena against Eric Aguilar, Los Angeles Superior Court, Case No. LS0O29376 ("*Aguilar IV Action*").
- Exhibit 10: December 5, 2017, Order, *Aguilar IV Action*.

- Exhibit 11: June 7, 2017, Request for Civil Harassment Restraining Orders, Form CH-100, Eric Aguilar against Cesar Pardo-Pena, Los Angeles Superior Court, Case No. 17VER000060 ("*Aguilar V Action*").
- Exhibit 12: December 5, 2017, Order, *Aguilar V Action*.
- Exhibit 13: July 5, 2017, Request for Civil Harassment Restraining Orders, Form CH-100, Cesar Pardo-Pena against Angelica Chacana, Los Angeles Superior Court, Case No. 17VER000259 ("*Chacana Action*").
- Exhibit 14: December 5, 2017, Order, *Chacana Action.*
- Exhibit 15: July 5, 2017, Request for Civil Harassment Restraining Orders, Form CH-100, Cesar Pardo-Pena against Sharyn Grose, Los Angeles Superior Court, Case No. 17VER000260 ("*Grose Action*").
- Exhibit 16: August 2, 2017, Order, *Grose Action*.
- Exhibit 17: December 5, 2017 hearing transcript from proceedings in *Aguilar IV Action*, *Aguilar V Action*, *Chacana Action*.
- Exhibit 18: November 9, 2017 hearing transcript from proceedings in *Aguilar IV Action*, *Aguilar V Action*, *Chacana Action*, *Grose Action*.
- Exhibit 19: July 10, 2017, Unlawful Detainer Complaint, Los Angeles Superior Court, Case No. 17B02743 ("*Unlawful Detainer Action*").
- Exhibit 20: April 19, 2018, Court Judgment, *Unlawful Detainer Action*.
- Exhibit 21: April 19, 2018, Jury Verdict Form, *Unlawful Detainer Action*.
- Exhibit 22: January 27, 2020, Remittitur by the Court, *Unlawful Detainer Action*.
- Exhibit 23: December 3, 2018, Notice of Case Closure from the Department of Fair Employment and Housing ("DFEH") to Plaintiff.
- Exhibit 24: September 30, 2020, Response to Appeal from DFEH to Plaintiff.

///
///

4

- Exhibit 25: January 27, 2020, Appellate Opinion by the Appellate Division of the Los Angeles Superior Court in Unlawful Detainer action, Appellate Case No. 17B02743 ("*Unlawful Detainer Appeal*").
- Exhibit 26: October 2, 2019, Respondent's Brief, *Unlawful Detainer Appeal.*
- Exhibit 27: August 23, 2017, Plaintiff's Answer, *Unlawful Detainer Action.*

(Defs.' Am. RJN. 2–5.)[2]  Plaintiff does not object to any of Defendants' requests for judicial notice.  (*See generally* Pl.'s Opp'n.)

Plaintiff filed a Request for Judicial Notice comprised mostly of arguments in Opposition to the Motion.  (*See generally* Pl.'s RJN.)  Plaintiff also appears to request that the Court take judicial notice of the following:

- September 22, 2020 email from DFEH to Plaintiff.
- September 30, 2020 email from DFEH to Plaintiff.
- September 26, 2020 email from Plaintiff to DFEH.
- October 4, 2020 email from Plaintiff to DFEH.

(*See id.*)  Defendants object to Plaintiff's Request for Judicial Notice, arguing that arguments are not appropriate for judicial notice, and Plaintiff fails to provide a basis to judicially notice the DFEH emails.  (Defs.' Obj. to Pl.'s RJN 2.)

### B.   Legal Standard

Federal Rule of Evidence 201 permits a court to take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  A court may take judicial notice of court filings and other matters

---

[2] Citations to page numbers in docketed documents are to those in CM/ECF-generated headers.

of public record.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 750 n.6 (9th Cir. 2006); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).  "But a court cannot take judicial notice of disputed facts contained in such public records."  *Khoja*, 899 F.3d at 999.

### C.    Discussion

The Court GRANTS in part and DENIES in part Defendants' Request for Judicial Notice.  The Court will take judicial notice of Defendants' Exhibits 3–16, 19–22, and 25–27 as they are court opinions, orders, or filings from another court's records, which can be judicially noticed.  *See Reyn's Pasta Bella*, 442 F.3d at 750 n.6.  The Court also will take judicial notice of Exhibits 17–18, as certified copies of court transcripts can be judicially noticed.  *See Johnson v. Uribe*, 682 F.3d 1238, 1246 n.4 (9th Cir. 2012) (taking judicial notice of a certified copy of a court transcript as "[t]he transcript is a certified copy from the state court whose accuracy cannot reasonably be questioned.").  The Court declines to take judicial notice of the closure letters from DFEH to Plaintiff (Exhibits 23–24), as Defendants do not rely on them in their Motion and they are not necessary to resolve the Motion.  *See, e.g., Evox. Prods. LLC v. Chrome Data Sols., LP*, No. 3:16-cv-0057-PK, 2016 U.S. Dist. LEXIS 152047, at *8 (D. Or. Aug. 31, 2016) ("Even if the documents were amenable to judicial notice, they are not necessary to resolve the motion to dismiss. I recommend denying Plaintiff's motion for judicial notice."), *adopted*, 2016 U.S. Dist. LEXIS 150937 (D. Or. Nov. 1, 2016).

The Court DENIES Plaintiff's Request for Judicial Notice.  The Court cannot take judicial notice of Plaintiff's arguments because they are subject to reasonable dispute and should be asserted in Plaintiff's Opposition to Defendants' Motion.  *See, e.g., Phillips v. Truby*, No. 2:21-cv-00358-KJD-EJY, 2021 U.S. Dist. LEXIS 123328, at *3–4 (D. Nev. July 1, 2021) ("The Court cannot take judicial notice of [Plaintiff's] arguments. The arguments Plaintiff raises in his requests for judicial

1   notice may instead be properly raised in pleadings advancing his claims in the

2   normal course of this action.").  The Court declines to take judicial notice of the

3   emails exchanged between Plaintiff and DFEH, as they are not generally known

4   within the Court's jurisdiction, are subject to reasonable dispute, and are not

5   necessary to resolve the Motion.  *See* Fed. R. Evid. 201(b); *Evox Prods. LLC*, 2016

6   U.S. Dist. LEXIS 152047, at \*8.

7

8   **III.   SUMMARY OF FACTS**

9       **A.   Plaintiff's Allegations[3]**

10      Plaintiff moved into 4436 Woodman Avenue, Unit 15, Sherman Oaks,

11  California 91423 in 2005.  (TAC ¶¶ 10, 14.)  Defendant Chacana and her now ex-

12  husband, Defendant Aguilar, lived next door in Unit 16.  (*Id*. ¶ 14.)

13      Since the first day that Plaintiff moved in, Defendant Chacana subjected

14  Plaintiff to harassment by using Defendant Aguilar to harass him, for lodging noise

15  complaints with Defendant Chacana's supervisors at Defendant LBPM.  (*Id*. ¶ 15.)

16  Such harassment included insults in Spanish every time Plaintiff entered his unit,

17  and battery over thirty times by intentionally blocking Plaintiff's path every time he

18  saw him, "[h]is chest touching Plaintiff's."  (*Id*. ¶ 16.a–b.)  In addition, Defendant

19  Aguilar sexually harassed Plaintiff from 2014 through 2017 and as recently as

20  2020, by making unwelcome sexual comments and sexual advances (*id*. ¶¶ 16.c,

21  23), including the following:

22      •   Defendant Aguilar stalked Plaintiff to the laundromat, snuck up on him

23          out of nowhere, and stood three feet away leering at Plaintiff's crotch

24          area.  (*Id*. ¶ 23.b.)

25      •   Defendant Aguilar stalked Plaintiff for over a mile from the property,

26          snuck up on him out of nowhere, and spat on him.  (*Id*. ¶ 23.c.)

27

28  [3] The Court summarizes the allegations in the TAC, without opining on their veracity or merit or making any findings of fact.

- On July 21, 2106, Defendant Aguilar lay in wait for Plaintiff to enter his unit.  Defendant Aguilar came out in a one-piece leotard, not wearing any underwear, bare-chested, and looked directly at Plaintiff's crotch area, making aggressive sexual advances towards him.  When confronted, Defendant Aguilar intensified the sexual harassment.  (*Id*. ¶ 18.)

These experiences were not isolated instances, but were part of Defendant Aguilar's "long-standing pattern or practice of illegal sexual harassment of a straight male tenant." (*Id*. ¶ 17.)  Plaintiff characterizes Defendant Aguilar's behavior as "discrimination on the basis of sex, i.e., Plaintiff's perceived sexual orientation." (*Id*. ¶ 23.)

Defendant Chacana, in order to cover up the same-sex sexual harassment by Defendant Aguilar towards Plaintiff, sent Plaintiff a notice to vacate his tenancy. (*Id*. ¶ 19.)  Plaintiff successfully challenged Defendant Chacana's attempted eviction. (*Id*.)

On July 28, 2016, Plaintiff spoke with LBPM executive Defendant De Rubeis and reported sexual harassment by Defendant Aguilar and Defendant Chacana's attempted eviction, done solely to cover up Defendant Aguilar's sexual harassment of Plaintiff. (*Id*. ¶ 20.)  Defendant De Rubeis did nothing to intervene or prevent future sexual harassment by Defendant Aguilar. (*Id*.)  For reporting Defendant Chacana's misconduct and Defendant Aguilar's sexual harassment, Defendant Chacana instructed Defendant Grose to ignore and not intervene as Defendant Aguilar ramped up the harassment and stalking of Plaintiff, in order to sexually harass him. (*Id*. ¶ 21.)

Plaintiff was granted a temporary restraining order ("TRO") against Defendant Aguilar (*Aguilar I Action*), which only caused Defendant Aguilar to intensify his sexual harassment of Plaintiff. (*Id*. ¶ 22.)  A stalking and battery police report was filed with the Los Angeles police department. (*Id*. ¶ 23.c.)  The non-stop, severe, pervasive and unwelcomed sexual harassment by Defendant

8

1    Aguilar of Plaintiff forced Plaintiff to seek and obtain a second court order against

2    Defendant Aguilar on December 5, 2016 (*Aguilar III Action*).  (*Id.* ¶ 25.)

3         On March 17, 2017, Plaintiff reported these discriminatory practices to

4    Defendant LBPM's executives Defendants Stein and Theobold by email, but they

5    failed to take action to correct and/or end them.  (*Id.* ¶ 26.)  On March 28, 2017,

6    Plaintiff reported these discriminatory housing practices to Defendant LBPM and

7    its CEO Defendant Lopata via email, but he failed to take action to correct and/or

8    end them.  (*Id.* ¶ 27.)

9         Because Defendant LBPM enabled a sexual deviant, Defendant Aguilar, by

10   paying for his attorneys and allowing his sexual harassment to continue, Plaintiff

11   filed a third TRO against Defendant Aguilar on April 17, 2017 (*Aguilar IV Action*),

12   which became Case No. B287697 on appeal.  (*Id.* ¶ 28.)

13        On June 30, 2017, Defendant LBPM and its agents Defendants Chacana,

14   Grose, and Aguilar filed a false proof of service with the court and gave false

15   testimony, under penalty of perjury, in order to get a default judgment for a

16   permanent restraining order against Plaintiff and served him a three-day notice for

17   reporting same-sex, sexual harassment in housing.  (*Id.* ¶ 29.)

18        On July 10, 2017, an unlawful detainer lawsuit was filed against Plaintiff

19   "that used an illegally obtained, permanent restraining order, as its just cause"

20   (*Unlawful Detainer Action*, which became the *Unlawful Detainer Appeal* on

21   appeal).  (*Id.* ¶ 30.)

22        On February 28, 2018, Plaintiff served a personal appearance subpoena on

23   LBPM executive Defendant De Rubeis.  (*Id.* ¶ 23.d.)  Plaintiff arrived at Van Nuys

24   Courthouse.  A few minutes later, Defendant Aguilar arrived out of nowhere, stood

25   three feet away, and looked directly at Plaintiff's crotch area as he sexually

26   harassed Plaintiff.  (*Id.*)  Defendant Aguilar had followed Plaintiff 3.3 miles from

27   the premises of Defendant LBPM to the Van Nuys Courthouse.  (*Id.*)

28   ///

1   On March 1, 2018, Plaintiff left his unit at 6 a.m. and arrived at the Van Nuys
2   Courthouse at or around 9:45 a.m. to file the subpoena proof of service. (*Id.*
3   ¶ 23.e.) As Plaintiff was using the public access computer, Defendant Aguilar was
4   sitting three feet away, sexually harassing Plaintiff. (*Id.*) Defendant Aguilar had
5   stalked Plaintiff for four hours. (*Id.*) Plaintiff immediately reported these two
6   incidents to the attorney representing Defendant LBPM via text message, yet the
7   attorney did nothing to intervene or prevent future harassment by Defendant
8   Aguilar. (*Id.*)

9   On April 19, 2018, Plaintiff was illegally evicted for reporting "hostile
10  environment same-sex, sexual harassment in housing." (*Id.* ¶ 31.)

11  In mid-May 2020, Plaintiff was in Sherman Oaks walking southbound on
12  Venture Canyon Avenue at Moorpark Street; Defendant Aguilar was driving
13  westbound on Moorpark Street. (*Id.* ¶ 16.c.) Defendant Aguilar drove to Ventura
14  Boulevard at Ventura Canyon Avenue and parked his truck on Ventura Boulevard
15  so he could sexually harass Plaintiff after having stalked him. (*Id.*) Defendant
16  Aguilar sexually harassed Plaintiff as he was walking directly towards him by
17  saying, "Where are you going" to Plaintiff, a heterosexual male. (*Id.*)

18  Based upon these allegations, Plaintiff asserts that Defendant LBPM is
19  vicariously liable for the actions of its agents, Defendants Lopata, De Rubeis, Stein,
20  and Theobald (*id.* ¶ 32); that Defendants Lopata, De Rubeis, Stein and Theobald are
21  vicariously liable for the actions of their agents, Defendants Chacana, Grose, and
22  Aguilar (*id.* ¶ 33); and that Defendants Chacana, Grose, and Aguilar are liable for
23  their actions (*id.* ¶ 34). Plaintiff further asserts that at least some of the
24  discriminatory housing practices of Defendants Chacana, Grose, and Aguilar
25  occurred within the scope of their agency relationship with Defendant LBPM, or
26  were aided by the existence of that agency relationship. (*Id.* ¶ 24.) Defendant
27  LBPM knew or should have known of these discriminatory housing practices and
28  failed to take prompt action to correct and/or end them. (*Id.*)

10

The following allegations are under a heading entitled "Claim for Relief." The TAC asserts that Defendants have: (1) discriminated in the terms, conditions, or privileges of rental dwellings, because of sex—i.e., Plaintiff's perceived sexual orientation—in violation of 42 U.S.C. § 3604(b) of the FHA; (2) made statements with respect to the rental of dwellings that indicate a preference, limitation, or discrimination based on sex—i.e., Plaintiff's perceived sexual orientation—in violation of 42 U.S.C. § 3604(c) of the FHA; and (3) coerced, intimidated, threatened, or interfered with the enjoyment of rights granted or protected by Sections 804 and 805 of the FHA, in violation of 42 U.S.C. § 3617 of the FHA.  (*Id*. ¶ 36.)  The TAC asserts that Defendants' conduct constitutes: (1) a pattern or practice of resistance to the full enjoyment of the rights granted by the FHA; and (2) a denial to a group of person of rights granted by the FHA.  (*Id*. ¶ 37.)  Plaintiff asserts that by reason of Defendants' unlawful acts and practices, he "has suffered loss of important housing opportunities, violation of his civil rights, deprivation of the full use and enjoyment of his tenancy, wrongful eviction, and severe emotional distress and physical injury, humiliation and mental anguish, including bodily injury, such as assault, battery; and reliving the experience of being stalked, in order to be sexually harassed; and other special and general damages according to proof." (*Id*. ¶ 39.)  Plaintiff asserts that Defendants owed Plaintiff a duty to operate the subject property in a manner that was free from unlawful discrimination, and to hire, train, supervise, and discipline their employees and themselves to fulfill that duty.  (*Id*. ¶ 43.)  "Defendants negligently violated that duty by discriminating against Plaintiff, by allowing hostile environment same-sex, sexual harassment in housing to persist."  (*Id*.)  Defendants' violation of that duty was a result of negligence, including: Defendants' negligent failure to hire persons who were familiar with the requirements of federal fair housing laws; Defendants' negligent failure to train their employees and themselves regarding the requirements of federal fair housing laws; and Defendants' negligent failure to discipline or

11

terminate employees who failed to comply with the requirements of federal fair housing laws.  (*Id*. ¶ 43.a–c.)  Defendants illegally evicted Plaintiff for reporting same-sex, sexual harassment in housing by "an undocumented immigrant, 'working under the table,'" for Defendant LBPM.  (*Id*. ¶ 44.)

The following allegations are under a section entitled "Prayer for Relief." Plaintiff seeks: (1) an order declaring that Defendants' discriminatory practices violated the FHA; (2) an order enjoining Defendants from: (a) discriminating on the basis of a person's sex (i.e., perceived sexual orientation), including sexual harassment in the rental of a dwelling; (b) interfering with or threatening to take any action against any person engaged in the exercise or enjoyment of rights granted or protected by the FHA; (c) failing to take affirmative steps to restore the victims of Defendants' past unlawful practices to the position they would have been in but for the discriminatory conduct; and (d) failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discrimination conduct in the future to eliminate, as nearly as practicable, the effects of Defendants' unlawful practices; (3) preventative relief, including a permanent or temporary injunction, or restraining order against Defendants from violating the FHA; (4) monetary damages, including compensatory and punitive damages; (5) pre- and post-judgment interest; and (6) civil penalties.  (*Id*. at 16–18.)

## B.    Undisputed Facts[4]

On July 25, 2016, Plaintiff filed a Civil Harassment Prevention action against Defendant Aguilar (*Aguilar I Action*).  (SSUF ¶ 1.)  On July 29, 2016, Defendant Aguilar filed a Civil Harassment Prevention action against Plaintiff (*Aguilar II Action*).  (SSUF ¶ 2.)  On November 9, 2016, a hearing on the *Aguilar I Action* and Aguilar *II Action* was held (SSUF ¶ 3), which Plaintiff attended (SSUF ¶ 4.)  At the

---

[4] These facts are undisputed.  Discrepancies are construed in the light most favorable to Plaintiff, the nonmovant.

1  November 9, 2016 hearing, Plaintiff and Defendant Aguilar entered into a

2  settlement agreement.  (SSUF ¶ 5.)

3      On December 5, 2016, Plaintiff filed a second Civil Harassment Prevention

4  action against Defendant Aguilar (*Aguilar III Action*).  (SSUF ¶ 6.)  On February 2,

5  2017, a hearing on the *Aguilar III Action* was held (SSUF ¶ 7), during which the

6  court denied Plaintiff's motion for a continuance and granted Plaintiff's motion for

7  dismissal of the action (SSUF ¶ 8).

8      On April 17, 2017, Plaintiff filed a third Civil Harassment Prevention action

9  against Defendant Aguilar (*Aguilar IV Action*).  (SSUF ¶ 9.)  On June 7, 2017,

10  Defendant Aguilar filed a second Civil Harassment Prevention action against

11  Plaintiff (*Aguilar V Action*).  (SSUF ¶ 10.)

12      On July 5, 2017, Plaintiff filed a Civil Harassment Prevention action against

13  Defendant Grose (*Grose Action*) (NOL Ex. 15), and a Civil Harassment Prevention

14  action against Defendant Chacana (*Chacana Action*) (*Id*. Ex. 13).  Defendant Grose

15  and Defendant Chacana are employees of Defendant LBPM.  (SSUF ¶¶ 38–39.)

16      On November 9, 2017, a hearing was held on the *Aguilar IV Action*, *Aguilar*

17  *V Action*, *Grose Action*, and *Chacana Action*.  (NOL Ex. 18, at 222–23; SSUF

18  ¶ 16.)  With respect to the *Grose Action*, after hearing evidence from Plaintiff and

19  Defendant Grose, the court: denied Plaintiff's petition for a Temporary Restraining

20  Order against Defendant Grose (SSUF ¶ 16); held that Plaintiff presented no

21  evidence that unlawful violence was perpetrated against him (SSUF ¶ 17); held that

22  the evidence Plaintiff presented did not give rise to the level of a civil harassment

23  restraining order (SSUF ¶ 18); found that Plaintiff's allegations of the retaliatory

24  eviction process against him was "largely conclusory and speculative" (SSUF

25  ¶ 19); and denied the *Grose Action* with prejudice (SSUF ¶ 20).

26      On December 5, 2017, a hearing was held on the *Aguilar IV Action*, *Aguilar*

27  *V Action*, and *Chacana Action*.  (SSUF ¶ 11, 21.)  After evidence was presented by

28  Plaintiff and Defendant Aguilar, the court: dismissed the *Aguilar IV Action* (SSUF

13

¶ 12); granted Defendant Aguilar a three-year restraining order against Plaintiff in the *Aguilar V Action* (SSUF ¶¶ 13, 14); and ordered Plaintiff to pay Defendant Aguilar's attorneys' fees (SSUF ¶ 14).  On July 26, 2019, Plaintiff's appeal of the restraining order issued by the court in the *Aguilar V Action* was denied.  (SSUF ¶ 15.)

As to the *Chacana Action*, after hearing evidence from Plaintiff and Defendant Chacana on December 5, 2017, the court: denied Plaintiff's petition for a Temporary Restraining Order against Defendant Chacana (SSUF ¶ 21); held that there was no harassment in terms of clear and convincing evidence regarding Plaintiff's allegations of unlawful rent increases and retaliation (SSUF ¶ 22); stated that the court did not know if Plaintiff had necessarily even demonstrated that sexual harassment took place (SSUF ¶ 23); ruled that Plaintiff had not presented the evidence to give rise to a civil harassment restraining order (SSUF ¶ 24); found that the evidence presented suggested that Defendant Chacana took appropriate action in her capacity as the property manager in her course of conduct (SSUF ¶ 25); and denied the *Chacana Action* against Defendant Chacana with prejudice (SSUF ¶ 26).

On April 19, 2018, the Superior Court of California County of Los Angeles entered a judgment in the *Unlawful Detainer Action* filed by Spector/Ong Living Trust U/A dtd 9/5/14 ("the Trust") through George Ong against Plaintiff.  (SSUF ¶ 27.)  Judgment was for George Ong, Trustee of the Trust and against Plaintiff. (SSUF ¶ 28.)  The jury in the *Unlawful Detainer Action* found that Plaintiff committed a nuisance on the property (SSUF ¶ 29) and that there was no retaliatory motive in bringing the Unlawful Detainer Action (SSUF ¶ 30).  The court ordered Plaintiff to pay $10,000 in holdover rent.  (SSUF ¶ 31.)

On January 27, 2020, the appellate court issued a Remittitur to the decision in the *Unlawful Detainer Action* to affirm the judgment issued by the lower court. (SSUF ¶ 34.)  The appellate court in the *Unlawful Detainer Appeal* found that the lower court did not commit prejudicial error and did not abuse its discretion.

14

1   (SSUF ¶ 35.)  The appellate court affirmed the judgment of the lower court and

2   awarded costs on appeal to the Trust.  (SSUF ¶ 36.)

3        On April 17, 2020, Plaintiff filed a complaint with the Court in this action.

4   (SSUF ¶ 37.)

5

6   **IV.   STANDARD OF REVIEW**

7        Summary judgment is appropriate "if the movant shows that there is no

8   genuine dispute as to any material fact and the movant is entitled to judgment as a

9   matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

10  (1986).  A fact is material when, under the governing law, the resolution of that fact

11  might affect the outcome of the case; factual disputes that are irrelevant or

12  unnecessary will not be counted.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

13  248 (1986).  A dispute is genuine if "there is sufficient evidence favoring the

14  nonmoving party for a jury to return a verdict for that party."  *Id.* at 249.  No

15  genuine issue of fact exists "[w]here the record taken as a whole could not lead a

16  rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co.*

17  *v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

18       A party seeking summary judgment bears the initial burden to inform the

19  court of the basis for its motion and to establish the absence of a genuine issue of

20  material fact.  *See Celotex*, 477 U.S. at 323.  "Where the non-moving party bears

21  the burden of proof at trial, the moving party need only prove that there is an

22  absence of evidence to support the non-moving party's case.  Where the moving

23  party meets that burden, the burden then shifts to the non-moving party to designate

24  specific facts demonstrating the existence of genuine issues for trial."  *Coomes v.*

25  *Edmonds Sch. Dist. No. 15,* 816 F.3d 1255, 1266 n.2 (9th Cir. 2016) (quoting *In re*

26  *Oracle Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)).  "When the party moving for

27  summary judgment would bear the burden of proof at trial, 'it must come forward

28  with evidence which would entitle it to a directed verdict if the evidence went

15

1    uncontroverted at trial.'" *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213

2    F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536

3    (9th Cir. 1992)).  "Once the moving party comes forward with sufficient evidence,

4    'the burden then moves to the opposing party, who must present significant

5    probative evidence tending to support its claim or defense.'"  *Id*. (quoting *Intel*

6    *Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991)).

7        "In judging evidence at the summary judgment stage, the court does not

8    make credibility determinations or weigh conflicting evidence."  *Soremekun v.*

9    *Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  Rather, the nonmoving

10    party's evidence is believed, and all justifiable inferences are drawn in that party's

11    favor. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).  Furthermore, the evidence

12    presented by the parties must be admissible.  *Soremekun*, 509 F.3d at 984.

13    "Conclusory, speculative testimony in affidavits and moving papers is insufficient

14    to raise genuine issues of fact and defeat summary judgment."  *Soremekun*, 509

15    F.3d at 984.  "If the evidence is merely colorable, or is not significantly probative,

16    summary judgment may be granted."  *Anderson*, 477 U.S. at 249–50 (citations

17    omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's

18    position" is insufficient to survive summary judgment; "there must be evidence on

19    which the jury could reasonably find for the plaintiff."  *Id*. at 252.

20

21    **V.**      **DISCUSSION**

22        **A.**      **Defendants' Motion**

23        Defendants move for summary judgment on Plaintiff's claims for retaliation

24    and harassment on three grounds: (1) res judicata; (2) collateral estoppel; and

25    (3) the *Rooker-Feldman* doctrine.  (Defs.' Am. Not. 2–4; Mot. 6–7.)  Defendants

26    argue that Plaintiff's allegations of harassment and retaliation in the TAC were fully

27    adjudicated in multiple state court civil harassment prevention actions and a state

28    court unlawful detainer action, and that judgments were entered against Plaintiff.

(Mot. 6–7.)  As such, the doctrine of res judicata and collateral estoppel bar Plaintiff from attempting to relitigate his causes of action in this action, and the *Rooker-Feldman* doctrine prohibits Plaintiff from seeking review of state court proceedings that have been fully adjudicated on the merits.  (*Id*.)  Alternatively, Defendants request the Court grant partial summary judgment on those claims the Court determines to be without genuine issue of material fact.  (*Id*. at 20–21.)

Because the *Rooker-Feldman* doctrine provides a jurisdictional ground for dismissal, the Court must address it first.  *See Elwood v. Drescher*, 456 F.3d 943, 948 (9th Cir. 2006) ("*Rooker-Feldman* provides a jurisdictional ground for dismissal, and federal courts must generally address jurisdictional issues first . . . .").  The Court then will address res judicata and collateral estoppel as to any claims and issues remaining after application of the *Rooker-Feldman* doctrine.

### B.    Plaintiff's Claims

As a starting point, the Court deciphers the allegations and claims asserted in the TAC.  The allegations of Defendants' actions against Plaintiff are as follows:

- Defendant Aguilar sexually harassed Plaintiff through unwelcome physical contact, comments, advances, and stalking.
- Defendant Chacana subjected Plaintiff to harassment through Defendant Aguilar; attempted to evict Plaintiff to cover up the sexual harassment; and instructed Defendant Grose to ignore and not intervene as Defendant Aguilar sexually harassed Plaintiff.
- Plaintiff reported the sexual harassment to Defendant LBPM through its agents Defendants De Rubeis, Stein, Theobald, and Lopata, and to an attorney representing Defendant LBPM, but they took no steps to stop the hostile housing environment.
- Defendant LBPM and its agents Defendants Chacana, Grose, and Aguilar filed a false proof of service in a state civil harassment proceeding and

17

1    gave false testimony, so they could get a default judgment for a
2    permanent restraining order against Plaintiff and evict him, and served
3    him a three-day notice for reporting same-sex, sexual harassment in
4    housing.

5    • Plaintiff was illegally evicted for reporting a hostile sexual harassment
6    environment.

7    Though inartfully pled, the Court liberally interprets the TAC as asserting the
8    following claims:

9    • Claim 1: Discriminatory housing practices for sexual harassment in
10   violation of the FHA - Defendants Aguilar and Chacana.

11   • Claim 2: Discriminatory housing practices for failure to stop a hostile
12   housing environment in violation of the FHA - Defendants LBPM,
13   Chacana, Grose, De Rubeis, Stein, Theobald, and Lopata.

14   • Claim 3: Retaliatory eviction - Defendants LBPM, Chacana, Grose, and
15   Aguilar.

16   In his Opposition, Plaintiff clarifies that he is not asserting a harassment or
17   retaliation claim against Defendants LBPM, Lopata, De Rubeis, Stein, Theobald,
18   Chacana or Grose—i.e., all Defendants except Defendant Aguilar.  (Opp'n 6–7.)
19   Rather, Plaintiff characterizes his claims as follows: "This is a Civil Rights
20   Violation case alleging that the aforementioned defendants violated the Fair
21   Housing Act and related federal laws by intentionally, willfully and knowingly
22   allowing a Hostile Housing Environment to exist and persist, after being made
23   aware of the Discriminatory Acts, as perpetrated by Defendant Aguilar."  (*Id*. at 7.)
24   Thus, it appears that Plaintiff either: (1) never intended to assert Claim 1
25   (discriminatory housing practices for sexual harassment in violation of the FHA)
26   against Defendant Chacana and Claim 3 (retaliatory eviction); or (2) now has
27   abandoned them.  *See Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008)
28   (explaining that a plaintiff abandons claims by not raising them in opposition to a

18

defendant's motion for summary judgment).  Either way, the totality of Plaintiff's claims are now as follows:

- Claim 1 against Defendant Aguilar: Discriminatory housing practices for sexual harassment in violation of the FHA.

- Claim 2 against Defendants LBPM, Chacana, Grose, De Rubeis, Stein, Theobald, and Lopata: Discriminatory housing practices for failure to stop a hostile housing environment in violation of the FHA.

### C.  *Rooker-Feldman* Doctrine

####    1.   Legal Standard

The *Rooker-Feldman* doctrine derives its name from two Supreme Court cases: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  *Doe v. Mann*, 415 F.3d 1038, 1041 (9th Cir. 2005).  "[U]nder *Rooker-Feldman*, a federal district court is without subject matter jurisdiction to hear an appeal from the judgment of a state court." *Id*. (quoting *Bianchi v. Rylaarsdam*, 334 F.3d 895, 896 (9th Cir. 2003)).  The *Rooker-Feldman* doctrine "is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  "At its core, the *Rooker-Feldman* doctrine stands for the unremarkable proposition that federal district courts are courts of original, not appellate, jurisdiction." *In re Gruntz*, 202 F.3d 1074, 1078 (9th Cir. 2000) (citing 28 U.S.C. §§ 1331, 1332).  "Absent express statutory authorization, only the Supreme Court has jurisdiction to reverse or modify a state court judgment." *Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007).  The *Rooker-Feldman* doctrine is fairly narrow, separate and distinct from res judicata and collateral estoppel. *Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2010).

To determine whether the *Rooker-Feldman* doctrine applies to bar subject matter jurisdiction, a district court first must determine whether the action contains a forbidden de facto appeal of a state court decision. *See Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003). "To determine whether an action functions as a de facto appeal, [courts] 'pay close attention to the *relief* sought by the federal-court plaintiff.'" *Cooper v. Ramos*, 704 F.3d 772, 777–78 (9th Cir. 2012) (quoting *Bianchi*, 334 F.3d at 900). "A suit brought in federal district court is a 'de facto appeal' forbidden by *Rooker-Feldman* when 'a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision.'" *Carmona*, 603 F.3d at 1050 (quoting *Noel*, 341 F.3d at 1164). "In contrast, if a plaintiff 'asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction.'" *Id.* (quoting *Noel*, 341 F.3d at 1164).

If a lawsuit contains a de facto appeal, a district court is barred from deciding not only the issues decided by the state court, but also any other issues that are "inextricably intertwined" with the state court's decision. *See Noel*, 341 F.3d at 1158. "A claim is inextricably intertwined with a state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it, or if the relief requested in the federal action would effectively reverse the state court decision or void its ruling." *Fontana Empire Ctr., LLC v. City of Fontana*, 307 F.3d 987, 992 (9th Cir. 2002) (quotation marks and citations omitted). The "inextricably intertwined" inquiry is a "second and distinct step in the *Rooker-Feldman* analysis." *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013). "Should the action *not* contain a forbidden de facto appeal, the *Rooker-Feldman* inquiry ends." *Id*.

///

///

///

20

2. <u>Discussion</u>

Defendants argue that this action involves the "exact same facts and issues" as the state court actions, and that such state actions resulted in four final adjudication on the merits against Plaintiff: (1) issuance of a restraining order against Plaintiff in the *Aguilar V Action*; (2) dismissal with prejudice of the *Grose Action*; (3) dismissal with prejudice of the *Chacana Action*; and (4) a jury in the *Unlawful Detainer Action* found that there was no retaliatory motive in bringing the *Unlawful Detainer Action*. (Mot. 20.) Defendants argue that these prior state court actions already litigated and adjudicated Plaintiff's claims of harassment and retaliation, Plaintiff adds no new claims or issues in this case, and the *Rooker-Feldman* doctrine prevents Plaintiff from seeking the Court to relitigate and reconsider the state court proceedings. (*Id*.)

Plaintiff argues that the *Rooker-Feldman* doctrine is inapplicable to this case because Plaintiff is not complaining of injuries caused by the state-court judgment rendered before the federal district court proceedings commenced and is not inviting district court review nor seeking to overturn an alleged, perceived injurious rejection of that judgment. (Opp'n 13.)

Defendants' briefing on the *Rooker-Feldman* doctrine is surprisingly short—totaling one page in the Motion and one page in the Reply—and appears to confuse the *Rooker-Feldman* doctrine with res judicata and/or collateral estoppel. (*See* Mot. 20; Reply 23.) Rather than point out an injury caused by a state court decision, Defendants simply argue that the issues of harassment and retaliation in housing practice already have been litigated—arguments that are more appropriate for preclusion rather than the *Rooker-Feldman* doctrine. However, as courts have a "'continuing, independent obligation' to ensure that we have subject matter jurisdiction over a case," *Clark v. City of Seattle*, 899 F.3d 802, 808 (9th Cir. 2018) (quoting *Mashiri v. Dep't of Educ.*, 724 F.3d 1028, 1031 (9th Cir. 2013), the Court will undertake an independent examination of the *Rooker-Feldman* doctrine.

21

As a starting point, the Court notes that *Rooker-Feldman* does not apply simply because two lawsuits involve "the exact same facts and issues." (*See* Mot. 20.) *See Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1142 (9th Cir. 2004) ("It is true that factual allegations and legal claims in these four causes of action are almost identical to the allegations and claims asserted in state court in Kougasian I and II, but that is not sufficient reason to find the causes of action barred by *Rooker-Feldman*."). Rather, *Rooker-Feldman* bars jurisdiction only where a state court loser complains of legal wrongs allegedly committed by the state court and seeks relief from a judgment of that court. *See Noel*, 341 F.3d at 1163.

Here, the TAC does not complain of injuries caused by the issuance of the restraining order against Plaintiff in the *Aguilar V Action*, or of the dismissals with prejudice of the *Aguilar IV Action*, *Grose Action* or *Chacana Action*. "[W]here the federal plaintiff does not complain of a legal injury caused by a state court judgment, but rather of a legal injury caused by an adverse party, *Rooker–Feldman* does not bar jurisdiction." *Noel*, 341 F.3d at 1163. "The [*Rooker-Feldman*] doctrine applies when the federal plaintiff's claim arises from the state court judgment, not simply when a party fails to obtain relief in state court." *Henrichs*, 474 F.3d at 613. "Preclusion, not *Rooker-Feldman*, applies when 'a federal plaintiff complains of an injury that was not caused by the state court, but which the state court has previously failed to rectify.'" *Id.* at 614 (quoting *Noel*, 341 F.3d at 1165). Thus, the *Rooker-Feldman* doctrine does not strip the Court of jurisdiction due to the state civil harassment actions.

As to the *Unlawful Detainer Action*, here the TAC alleges that: on April 19, 2018, Plaintiff was illegally evicted for reporting "hostile environment same-sex, sexual harassment in housing" (TAC ¶ 31); that Defendants' actions have "inhibited Plaintiff's ability to secure housing for himself and his family" (*id*. ¶ 35); that "Defendants fraudulently, maliciously, or oppressively illegally evicted[] a tenant that reported same-sex, sexual harassment in housing, by an undocumented

immigrant, 'working under the table,' for LB Property Management Inc" (*id.* ¶ 44); and that Plaintiff has suffered loss of important housing opportunities, deprivation of the full use and enjoyment of his tenancy, invasion of the private right of occupancy, and wrongful eviction (*id.* ¶¶ 39, 43.d).   Among other remedies, Plaintiff seeks an order enjoining Defendants from "[f]ailing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of Defendants' past unlawful practices to the position they would have been in but for the discriminatory conduct."  (*Id.* at 17.)   Though awkwardly worded, this sentence *potentially* could be interpreted as a request to undo Plaintiff's eviction. "A suit brought in federal district court is a 'de facto appeal' forbidden by *Rooker-Feldman* when 'a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision.'"  *Carmona*, 603 F.3d at 1050 (quoting *Noel*, 341 F.3d at 1164).   To the extent that the TAC seeks to undo Plaintiff's eviction as a result of the judgment entered in the *Unlawful Detainer Action*, the *Rooker-Feldman* doctrine would deprive this Court of subject matter jurisdiction over such a request.

However, Plaintiff has abandoned his retaliatory eviction claim, thereby withdrawing the only claim that potentially was impacted by the *Rooker-Feldman* doctrine (and then only with an attenuated interpretation of Plaintiff's request for relief).  With his remaining two FHA claims, Plaintiff does not complain of a legal injury caused by the unlawful detainer court, does not assert adverse effects of the judgment entered in the *Unlawful Detainer Action*, does not assert that the unlawful detainer court committed error, and does not seek reversal of the *Unlawful Detainer Action* judgment.   Rather, Plaintiff complains of discriminatory acts by Defendants. *See Kougasian*, 359 F.3d at 1142 ("[Plaintiff] does not, in these causes of action, allege legal errors by the state courts; rather, she alleges wrongful acts by the defendants, such as negligently designing the ski run and negligently placing or failing to remove the rock.").  "Preclusion, not *Rooker-Feldman*, applies when 'a

1    federal plaintiff complains of an injury that was not caused by the state court, but

2    which the state court has previously failed to rectify.'"  *Henrichs*, 474 F.3d at 614

3    (quoting *Noel*, 341 F.3d at 1165).  Thus, the *Rooker-Feldman* doctrine does not

4    strip the Court of jurisdiction due to the *Unlawful Detainer Action*.

5         For these reasons, the Court concludes that the *Rooker-Feldman* doctrine

6    does not deprive this Court of subject matter jurisdiction over this lawsuit, and

7    DENIES Defendants' Motion on the issue of *Rooker-Feldman*.

8

9         **D.    Res Judicata and Collateral Estoppel**

10             1.    Legal Standard

11        The United States Constitution provides that "Full Faith and Credit shall be

12   given in each State to the public Acts, Records, and judicial Proceedings of every

13   other State."  U.S. Const. art. IV, § 1.  "As implemented under 28 U.S.C. § 1978,

14   federal courts must 'give to a state-court judgment the same preclusive effect as

15   would be given that judgment under the law of the State in which the judgment was

16   rendered.'"  *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1130 (9th Cir. 2019)

17   (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)).

18        In determining the preclusive effect of a state court judgment, federal courts

19   follow the state's rules of preclusion.  *White v. City of Pasadena*, 671 F.3d 918, 926

20   (9th Cir. 2012).  "We therefore look to California law, which defines two main

21   forms of preclusion: claim, also known as res judicata; and issue, also known as

22   collateral estoppel."  *Rodriguez*, 930 F.3d at 1130.  Claim preclusion provides that

23   "a final judgment forecloses successive litigation of the very same claim, whether

24   or not relitigation of the claim raises the same issues as the earlier suit.'"  *Id.*

25   (quoting *White*, 671 F.3d at 926).  "Issue preclusion, in contrast, bars successive

26   litigation of an issue of fact or law actually litigated and resolved in a valid court

27   determination essential to the prior judgment, even if the issue recurs in the context

28   ///

24

1  of a different claim." *White*, 671 F.3d at 926 (quoting *Taylor v. Sturgell*, 553 U.S.
2  880, 892 (2008)).

3      Application of preclusion "is intended to preserve the integrity of the judicial
4  system, promote judicial economy, and protect litigants from harassment by
5  vexatious litigation.  It rests upon the sound policy of limiting litigation by
6  preventing a party who has had one fair adversary hearing on an issue from again
7  drawing it into controversy and subjecting the other party to further expense in its
8  reexamination." *Ayala v. Dawson*, 13 Cal. App. 5th 1319, 1325 (2017) (quoting
9  *City of Oakland v. Oakland Police & Fire Retirement System*, 224 Cal. App. 4th
10  210, 227–28 (2014) (internal quotation marks and citations omitted)).  The party
11  asserting res judicata or collateral estoppel bears the burden of establishing its
12  requirements.  *Patel v. Crown Diamonds*, 247 Cal. App. 4th 29, 40 (2016).

13      "In California, '[c]laim preclusion arises if a second suit involves: (1) the
14  same cause of action (2) between the same parties [or parties in privity with them]
15  (3) after a final judgment on the merits in the first suit." *Furnace v. Giurbino*, 838
16  F.3d 1019, 1023 (9th Cir. 2016) (alterations in original) (quoting *DKN Holdings*
17  *LLC v. Faerber*, 61 Cal. 4th 813, 824 (2015)).

18      In California, the doctrine of issue preclusion precludes relitigation of issues
19  argued and decided in prior proceedings when the following six criteria are met:

20      (1) "the issue sought to be precluded from relitigation must be
21      identical to that decided in a former proceeding"; (2) the issue to be
22      precluded "must have been actually litigated in the former
23      proceeding"; (3) the issue to be precluded "must have been
24      necessarily decided in the former proceeding"; (4) "the decision in the
25      former proceeding must be final and on the merits"; (5) "the party
26      against whom preclusion is sought must be the same as, or in privity
27      with, the party to the former proceeding"; and (6) application of issue
28      preclusion must be consistent with the public policies of "preservation

1    of the integrity of the judicial system, promotion of judicial economy,

2    and protection of litigants from harassment by vexatious litigation."

3    *White*, 671 F.3d at 926 (quoting *Lucido v. Superior Court*, 51 Cal. 3d 335, 341, 343

4    (1990)).

5

6                         2.    Discussion

7         Defendants' Motion moves for res judicata and collateral estoppel based on

8    the following arguments: "Plaintiff's allegations against Defendants can be summed

9    up as a single cause of action for harassment and retaliation against Plaintiff in

10   housing practice" (Mot. 11); "Plaintiff's claims of harassment by Defendants and

11   retaliation for his eviction" were alleged in the state court actions (*id*. at 12); such

12   claims resulted in four adjudication on the merits against Plaintiff: (1) issuance of a

13   restraining order against Plaintiff in the *Aguilar V Action*; (2) dismissal of the *Grose*

14   *Action* with prejudice; (3) dismissal of the *Chacana Action* with prejudice; and (4) a

15   jury in the *Unlawful Detainer Action* finding that there was no retaliatory motive by

16   Defendants in brining the action (*id*. at 13); and the state court actions involved the

17   same or parties in privity with Defendants (*id*. at 15–17).  In their Reply,

18   Defendants raise the new argument that Plaintiff's FHA claims should have been

19   brought in the previous state actions.[5]  (Reply 19.)

20        Plaintiff counters that the prior state court cases have no bearing on this

21   lawsuit, which is a civil rights case alleging that Defendants violated the FHA by

22   allowing a hostile housing environment to persist after being made aware of

23   Defendant Aguilar's discriminatory acts.  (Opp'n 6–7.)  As Plaintiff has abandoned

24   his retaliatory eviction claim, the Court will analyze Defendants' Motion regarding

25   res judicata and collateral estoppel as to harassment only.

26   _____

27   [5] A new argument cannot be raised for the first time in a reply brief.  *See United*

28   *States v. Cox*, 7 F.3d 1458, 1463 (9th Cir. 1993); *United States v. Boyce,*148 F.
     Supp. 2d 1069, 1085 (S.D. Cal. 2001) (collecting cases).

                                        26

1    Defendants clump all of the state court actions together and fail to

2    differentiate between the state civil harassment actions and *Unlawful Detainer*

3    *Action*.  (*See generally* Mot.)  As these are entirely different limited proceedings,

4    the Court will examine them separately.

5

6                          a.     *Civil Harassment Actions*

7                                 i.     Res Judicata/Claim Preclusion

8        Defendants do not meet their burden to show that res judicata/claim

9    preclusion applies with respect to the state civil harassment actions.  To begin with,

10   Defendants appear to presume—without any argument or legal citation—that state

11   civil harassment proceedings have full preclusive effect.  Defendants' Motion does

12   not even consider this issue.  (*See generally* Mot.)

13       However, California state civil harassment proceedings are very limited.

14   Under California Code of Civil Procedure section 527.6 ("Section 527.6"), a person

15   who has suffered harassment may seek a temporary restraining order and an order

16   after hearing prohibiting harassment.  Cal. Code Civ. P. § 527.6(a)(1).  "Section

17   527.6 was passed to supplement the existing common law torts of invasion of

18   privacy and intentional infliction of emotional distress by providing quick relief to

19   harassment victims threatened with great or irreparable injury."  *Grant v. Clampitt*,

20   56 Cal. App. 4th 586, 591 (1997).  "[A] [S]ection 527.6 petition is designed to be

21   processed simply and expeditiously.  A petition is filed, a hearing is held, normally

22   within a few weeks, and an order is made or not made."  *Siam v. Kizilbash*, 130 Cal.

23   App. 4th 1563, 1573 (2005).  A special harassment proceeding under Section 527.6

24   is "limited in its scope to enjoining action constituting harassment."  *Marquez-*

25   *Luque v. Marquez*, 192 Cal. App. 3d 1513, 1517 (1987).  The allegations supporting

26   an application for a Section 527.6 restraining order "may constitute completed

27   unlawful civil or criminal acts, such as trespassing or assault; but, while those

28   allegations may be necessary to establish the need for a restraining order, the court

                                          27

1   does not have jurisdiction to adjudicate those potential civil or criminal causes of

2   action.  The statute is designed to prevent threatened injury, it is not intended to

3   punish the restrained party for past acts."  *Dep't of Fair Emp. & Hous. v. Superior*

4   *Court*, 54 Cal. App. 5th 356, 389 (2020).  Indeed, Section 527.6 explicitly states

5   that "[t]his section does not preclude a petitioner from using other existing civil

6   remedies."  Cal. Civ. Code § 527.6(w); *see also Cardenas v. Whittemore*, No.

7   13cv1720-LAB (KSC), 2014 U.S. Dist. LEXIS 128191, at *6 (S.D. Cal. Sept. 11,

8   2014) ("Under California law, a Temporary Restraining Order does not preclude a

9   later civil suit.  California Code of Civil Procedure § 527.6 governs restraining

10  orders based on civil harassment . . . and subsection (u) of this code provides that

11  petitioners may pursue other civil remedies.").

12       The only cause of action that could have been asserted in the civil harassment

13  actions was a narrow request for a restraining order prohibiting harassment.  *See*

14  *Marquez-Luque*, 192 Cal. App. 3d at 1517.  Plaintiff could not have asserted any

15  other cause of action in the state civil harassment proceedings—including tort or

16  other civil claims based upon or for harassment—as the state civil harassment

17  courts would not have had subject matter jurisdiction over such causes of action.

18  *See Dep't of Fair Emp. & Hous.*, 54 Cal. App. 5th at 389.  "[U]nder California

19  preclusion law, in order for res judicata to apply to claims not raised in previous

20  proceedings, the court rendering the prior judgment must have had jurisdiction to

21  hear such claims."  *Pension Trust Fund for Operating Eng'rs v. Triple A Mach.*

22  *Shop, Inc.*, 942 F.2d 1457, 1460 (9th Cir. 1991) (quoting *Eichman v. Fotomat*

23  *Corp.*, 759 F.2d 1434, 1437 (9th Cir. 1985)).  California law recognizes an

24  exception to claim preclusion where a "plaintiff was unable to rely on a certain

25  theory of the case or to seek a certain remedy or form of relief in the first action

26  because of the limitations on the subject matter jurisdiction of the courts . . . and the

27  plaintiff desires in the second action to rely on that theory or to seek that remedy or

28  form of relief."  *Guerrero v. Dep't of Corr. & Rehab.*, 28 Cal. App. 5th 1091, 1103

28

1    (2018) (quoting Restatement (Second) of Judgments § 26(1)(c)).  As the civil
2    harassment court would not have had subject matter jurisdiction over any cause of
3    action other than the narrow request for a restraining order, the civil harassment
4    cases cannot have res judicata/claim preclusion over Plaintiff's FHA causes of
5    action here.

6         For these reasons, the Court DENIES Defendants' Motion regarding the
7    application of res judicata/claim preclusion as to the state civil harassment actions.

8

9                   ii.    Collateral Estoppel/Issue Preclusion

10        Defendants do not meet their burden of showing that the issue of harassment
11   in the state civil harassment proceedings is identical to the issue of harassment in
12   this lawsuit.  For collateral estoppel to apply, the issue decided previously must be
13   "identical" to the one sought to be precluded.  *Wimsatt v. Beverly Hills Weight Loss*
14   *Clinics Int'l, Inc.*, 32 Cal. App. 4th 1511, 1516 (1995).  "The 'identical issue'
15   requirement addresses whether 'identical factual allegations' are at stake in the two
16   proceedings, not whether the ultimate issues or dispositions are the same.'"  *Ass'n*
17   *of Irritated Residents v. Dep't of Conservation*, 11 Cal. App. 5th 1202, 1230–31
18   (2017) (quoting *Lucido*, 51 Cal. 3d at 342).

19        "Whether an issue is 'identical' to a previously adjudicated issue for purposes
20   of collateral estoppel depends on the burden and standard of proof applicable in
21   each proceeding or action in relation to the party who obtained a favorable finding
22   in the prior action and who then invokes collateral estoppel in the subsequent
23   proceeding with regard to that finding."  *Bennett v. Rancho Cal. Water Dist.*, 35
24   Cal. App. 5th 908, 919 (2019).  "Collateral estoppel does not apply where the two
25   proceedings at issue have different burdens of proof or where the burden of proof
26   falls on a different party in each proceeding."  *People v. Esmaili*, 213 Cal. App. 4th
27   1449, 1463 (2013) (citations omitted).  "Collateral estoppel will not ordinarily
28   apply if the party sought to be bound by a previous factual determination faced a

1    higher burden of proof in the first proceeding than is required by the current

2    proceeding." *Younan v. Caruso*, 51 Cal. App. 4th 401, 414 n.4 (1996); *see also*

3    *Dias v. Elique*, 436 F.3d 1125, 1129 (9th Cir. 2006); *Wimsatt,* 32 Cal. App. 4th at

4    1523–24.

5            To obtain a Section 527.6 injunction in a California civil harassment action, a

6    person must show the existence of unlawful harassment by "clear and convincing

7    evidence" Cal. Code Civ. P. § 527.6(i).  In contrast, the burden of proof for FHA

8    claims is the lower "preponderance of the evidence."  *See, e.g., Hill v. River Run*

9    *Homeowners Ass'n*, 438 F. Supp. 3d 1155, 1173 (D. Id. 2020); *Morris v. Hayden*

10   *Estate First Addition Homeowners Ass'n, Inc.*, 382 F. Supp. 3d 1093, 1104 (D. Id.

11   2019).

12           In the *Aguilar IV Action*, *Grose Action*, and *Chacana Action*, the state civil

13   harassment court: found that there was no clear and convincing evidence that

14   Defendants Aguilar, Grose, and Chacana harassed Plaintiff; denied Plaintiff's

15   requests for a temporary restraining order against Defendants Aguilar, Grose, and

16   Chacana; and dismissed Plaintiff's petitions against Defendants Aguilar, Grose, and

17   Chacana with prejudice.  (SSUF ¶¶ 12, 16–20, 21–26.)  Collateral estoppel will not

18   apply to the findings in these state civil harassment actions—which were subject to

19   a higher "clear and convincing evidence" burden of proof—to Plaintiff's FHA

20   claims in this lawsuit—which are subject to a lower "preponderance of the

21   evidence" burden of proof.  *See, e.g., In re Sylvia R.*, 55 Cal. App. 4th 559, 563

22   (1997) ("[A] failure to convict a parent of spousal abuse in a criminal proceeding—

23   where the burden is a high one—'beyond a reasonable doubt'—does not establish

24   that the parent did not commit spousal abuse for purposes of a proceeding where the

25   burden is lower— 'preponderance of the evidence'—as it is in dependency cases.").

26   Because the issues of whether Defendants Aguilar, Grose, and Chacana harassed

27   Plaintiff in the *Aguilar IV Action*, *Grose Action,* and *Chacana Action* were subject

28   to a higher burden of proof, they are not identical to the issue of harassment here.

1    The different burden of proof is not a bar to collateral estoppel for the

2  *Aguilar V Action*, where the state civil harassment court granted Defendant Aguilar

3  a restraining order against Plaintiff.  (SSUF ¶¶ 13, 14.)  If there was "clear and

4  convincing" evidence that Plaintiff harassed Defendant Aguilar, it follows that such

5  showing would meet a lower "preponderance of the evidence" burden.  *See Holt v.*

6  *Dep't of Food & Agric.*, 171 Cal. App. 3d 427, 433 (1985).  Nonetheless,

7  Defendants have not met their burden of showing that the issue of harassment in the

8  *Aguilar V Action* and this lawsuit are identical.  And, in fact, not only is it not

9  identical, but it is not even similar.  The issue in the *Aguilar V Action* was whether

10  Plaintiff harassed Defendant Aguilar (NOL Ex. 11), not—as is the issue here—

11  whether Defendant Aguilar harassed Plaintiff.  Defendants do not argue otherwise,

12  or move for collateral estoppel on the issue of whether Plaintiff harassed Defendant

13  Aguilar.

14    For these reasons, the Court DENIES Defendants' Motion regarding the

15  application of collateral estoppel/issue preclusion with respect to the state civil

16  harassment actions.

17

18        b.    *Unlawful Detainer Action*

19    Defendants again appear to assume—without any argument or legal

20  authority—that unlawful detainer actions have full preclusive effect.  Indeed,

21  Defendants again fail to even consider this issue in their Motion.  (*See generally*

22  Mot.)

23    In *Vella v. Hudgins*, 20 Cal. 3d 251 (1977), the California Supreme Court

24  explained that unlawful detainer actions are "summary in character"; that

25  "ordinarily, only claims bearing directly upon the right of immediate possession are

26  cognizable"; and that "cross-complaints and affirmative defenses, legal or

27  equitable, are permissible only insofar as they would, if successful, 'preclude

28  removal of the tenant from the premises.'"  *Id*. at 255 (internal quotation marks and

31

1   citations omitted).  "As a consequence of the foregoing principles, a judgment in

2   unlawful detainer usually has very limited res judicata effect and will not prevent

3   one who is dispossessed from bringing a subsequent action to resolve questions of

4   title, or to adjudicate other legal and equitable claims between the parties." *Id*.

5   (citations omitted).  In return for speedy determination of his right to possession, a

6   plaintiff in an unlawful detainer action sacrifices the comprehensive finality that

7   characterizes judgments in nonsummary actions.  *Id*. at 258.

8          "As such, for an unlawful detainer proceeding to provide res judicata or

9   collateral estoppel effect to subsequent litigation, there must first be the opportunity

10  for a full and fair litigation of the claim or issue before the unlawful detainer court."

11  *Stein v. Braum Inv. & Dev., Inc.*, 244 F. App'x 816, 818 (9th Cir. 2007); *see also*

12  *Pelletier v. Alameda Yacht Harbor*, 188 Cal. App. 3d 1551, 1557 (1986) ("Legal

13  and equitable claims—such as questions of title and affirmative defenses—are not

14  conclusively established unless they were fully and fairly litigated in an adversary

15  hearing.").  "The doctrine of res judicata, whether applied as a total bar to further

16  litigation or as collateral estoppel, 'rests upon the sound policy of limiting litigation

17  by preventing a party who has had *one fair adversary hearing* on an issue from

18  again drawing it into controversy and subjecting the other party to further expense

19  in its reexamination.'"  *Gonzalez v. Toews*, 111 Cal. App. 4th 977, 982 (2003)

20  (quoting *Vella*, 20 Cal. 3d at 257).

21

22                          i.      Res Judicata/Claim Preclusion

23         Defendants do not meet their burden to show that this lawsuit involves the

24  same cause of action as the *Unlawful Detainer Action*.  Defendants' Motion does

25  not discuss the standard for determining whether two actions involve the same

26  cause of action (*see generally* Mot.), and Defendants' Reply applies the incorrect

27  federal "nucleus of facts" test (*see* Reply 16).

28  ///

32

Because the *Unlawful Detainer Action* involves a state court judgment, the Court must follow California's rules of preclusion. *See White*, 671 F.3d at 926. "Unlike the federal courts, which apply a 'transactional nucleus of facts' test, 'California courts employ the 'primary rights' theory to determine what constitutes the same cause of action for claim preclusion purposes.'" *Brodheim v. Cry*, 584 F.3d 1262, 1268 (9th Cir. 2009) (quoting *Maldonado v. Harris*, 370 F.3d 945, 952 (9th Cir. 2004)). Under the primary rights theory, "a 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty." *Furnace*, 838 F.3d at 1024 (quoting *Mycogen Corp. v. Monsanto Corp.*, 28 Cal. 4th 888, 904 (2002)). "[I]f two actions involve the same injury to the plaintiff and the same wrong by the defendant, then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery." *Brodheim*, 584 F.3d at 1268 (alteration in original) (quoting *Eichman v. Fotomat Corp.*, 147 Cal. App. 3d 1170, 1174 (1983)). "What is critical to the analysis 'is the harm suffered; that the same facts are involved in both suits is not conclusive.'" *San Diego Police Officers' Ass'n v. San Diego City Emps. Ret. Sys.*, 568 F.3d 725, 734 (9th Cir. 2009) (quoting *Agarwal v. Johnson*, 25 Cal. 3d 932, 954 (1970)). "If the same primary right is involved in two actions, judgment in the first bars consideration not only of all matters actually raised in the first suit but also all matters which *could have been raised*." *Gonzales v. Cal. Dep't of Corr.*, 739 F.3d 1226, 1233 (9th Cir. 2014) (quoting *Eichman v. Fotomat Corp.*, 147 Cal. App. 3d 1170, 1175 (1983)).

Defendants do not offer any argument or legal citation regarding the primary rights at issue in either the *Unlawful Detainer Action* or this lawsuit. "In unlawful detainer proceedings, ordinarily the only triable issue is the right to possession of the disputed premises, along with incidental damages resulting from the unlawful detention." *Martin-Bragg v. Moore*, 219 Cal. App. 4th 367, 385 (2013). Thus, the

primary right in the *Unlawful Detainer Action* is the right to possession of the apartment.  *See Zimmerman v. Stotter*, 160 Cal. App. 3d 1067, 1074 (1984); *see also Thomas v. Hous. Auth. of L.A.*, No. CV 04-6970 MMM (RCx), 2005 U.S. Dist. LEXIS 46427, at *18 (C.D. Cal. June 6, 2005) ("A final judgment on the merits in an unlawful detainer action has preclusive effect with respect to the tenant's right to possession of the premises.").  In contrast, Plaintiff's FHA claims in this lawsuit involve the primary right to be free from harassment and a hostile housing environment.  Defendants do not offer any argument or legal citation to show that these two primary rights are the same.  Because this lawsuit does not involve the same primary right as the *Unlawful Detainer Action*, the *Unlawful Detainer Action* judgment has no res judicata/claim preclusion effect here.

The Court rejects Defendants' argument—improperly raised in their Reply— that res judicata encompasses Plaintiff's FHA claims because they could and should have been raised in the *Unlawful Detainer Action*.  In unlawful detainer actions, "only claims bearing directly upon the right of immediate possession are cognizable." *Vella*, 20 Cal. 3d at 255.  While Plaintiff's FHA claims involve some of the same facts that supported his retaliatory eviction defense, his FHA claims— for harassment and failure to stop a hostile housing environment—do not bear directly on Plaintiff's right to possession of the apartment.  "[I]n a situation in which a 'court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground … , then a second action in a competent court presenting the omitted theory or ground should be held not precluded.'" *Hong Sang Market, Inc. v. Peng*, 20 Cal. App. 5th 474, 491 (2018) (quoting *Merry v. Coast Community Coll. Dist.*, 97 Cal. App. 3d 214, 229 (1979)).  "Because the scope of an unlawful detainer proceeding is limited, the preclusive effect of an unlawful detainer judgment is likewise limited." *Id*.  Furthermore, Defendants' argument that Plaintiff's FHA claims should have been raised in the *Unlawful Detainer Action* "ignores that unlawful detainer actions possess limited res judicata effect

34

absent a sufficient record suggesting to the contrary." *Stein*, 244 F. App'x at 819 (citing *Vella*, 20 Cal. 3d at 255).

For these reasons, the Court DENIES Defendants' Motion regarding the application of res judicata/claim preclusion with respect to the *Unlawful Detainer Action*.

### ii.    Collateral Estoppel/Issue Preclusion

Because unlawful detainer proceedings are limited to deciding the right of possession of disputed premises, California courts generally analyze the preclusive effect of an unlawful detainer action under issue preclusion, rather than claim preclusion. *See Madrid v. KMF Fremont, Inc.*, No. 11-cv-05804 NC, 2012 U.S. Dist. LEXIS 201604, at *7 (N.D. Cal. Apr. 19, 2012).

Defendants have not met their burden to show that the issue of harassment was "actually litigated" in the *Unlawful Detainer Action*. "For purposes of collateral estoppel, an issue was actually litigated in a prior proceeding if it was properly raised, submitted for determination, and determined in that proceeding." *Hernandez v. City of Pomona*, 46 Cal. 4th 501, 511 (2009). "In considering whether these criteria have been met, courts look carefully at the entire record from the prior proceeding, including the pleadings, the evidence, the jury instructions, and any special jury findings or verdicts." *Id.* Defendants' discussion of this issue is cursory. (*See* Mot. 18.)

*Starshene Coates & Project Sentinel, Inc. v. Singh*, No. 1:14-cv-1910-LJO-SKO, 2016 U.S. Dist. LEXIS 3768 (E.D. Cal. Jan. 11, 2016) is instructive. In that case, Ms. Coates alleged that her landlord's husband, Mr. Singh, repeatedly sexually harassed her. *Id*. at *3–5. After Ms. Coates told Mrs. Singh about the sexual harassment and a police report she filed about the harassment, Mrs. Singh sent Ms. Coates a three-day notice to pay rent or quit. *Id*. at *5. Ms. Coates filed for a restraining order against the Singhs, and her attorney sent a letter to the Singhs

1  alleging sexual harassment and housing discrimination.  *Id*.  Mrs. Singh filed an
2  unlawful detainer action against Ms. Coates, to which Ms. Coates asserted an
3  affirmative defense of retaliatory eviction.  *Id*. at *5–6.  At the unlawful detainer
4  trial, Ms. Coates presented evidence of sexual harassment by Mr. Singh.  *Id*. at *8.
5  The court found that Ms. Coates did not meet her burden of proof on her affirmative
6  defenses.  *Id*.

7       While the state unlawful detainer action was pending, Ms. Coates filed a
8  lawsuit in federal court asserting, among other causes of action, violation of the
9  FHA.  *Id*.  The Singhs moved for judgment on the pleading on the basis of res
10  judicata or collateral estoppel.  *Id*. at *8–9.  The federal court concluded that
11  collateral estoppel barred Ms. Coates's wrongful eviction claim.[6]  *Id*. at *16.
12  However, noting the very limited res judicata effect of unlawful detainer actions,
13  the federal court concluded that all of Ms. Coates remaining claims—including her
14  FHA claim—was not barred by the unlawful detainer action judgment.  *Id*.  The
15  federal court noted that Ms. Coates's affirmative defenses in the unlawful detainer
16  action were limited to whether Mrs. Singh brought the eviction proceedings to
17  retaliate against Ms. Coates for her complaints of sexual harassment, seeking legal
18  counsel, and seeking restraining orders against the Singhs.  *Id*.  The federal court
19  stated that "[a]lthough her claims in this case are at times based on facts relevant to
20  her affirmative defenses (namely, Mr. Singh's alleged sexual harassment), the state
21  court did not make findings or rulings on whether the Singhs' conduct was unlawful
22  beyond finding that Mrs. Singh did not attempt to evict Plaintiff for illegal reasons."
23  *Id*. at *17.  "The state court did not find that the Singhs acted lawfully in all of their
24  interactions with Plaintiff; its findings were limited only to whether Mrs. Singh's
25  eviction proceedings were lawful and thus whether Plaintiff should be evicted."  *Id*.
26
27
28

[6] As Plaintiff has abandoned his retaliatory eviction claim, the Court does not opine whether such abandoned claim is barred by collateral estoppel.

36

Like *Starshene Coates*, in the *Unlawful Detainer Action*, Plaintiff asserted an affirmative defense of retaliatory eviction due to his reporting of sexual harassment. Defendants do not argue that Plaintiff asserted harassment as an affirmative defense in the *Unlawful Detainer Action*.  (*See generally* Mot.)  Defendants also do not argue that the issue of harassment was submitted to the jury for determination, or that it was determined in the *Unlawful Detainer Action*.  *See Hernandez*, 46 Cal. 4th at 511 ("For purposes of collateral estoppel, an issue was actually litigated in a prior proceeding if it was properly raised, submitted for determination, and determined in that proceeding.").  Like *Starshene Coates*, although Plaintiff's claims in this case are based on facts relevant to Plaintiff's retaliatory eviction defense, there is no evidence that the *Unlawful Detainer Action* jury made any findings or rulings regarding whether Defendants' actions against Plaintiff were lawful, other than that the eviction was not retaliatory.  Thus, the Court concludes that the issue of harassment was not "actually litigated" in the *Unlawful Detainer Action*.

Furthermore, there can be no collateral estoppel/issue preclusion because harassment was not "necessarily decided" in the *Unlawful Detainer Action*.  "An issue is 'necessarily decided' in a prior proceeding if the issue was not 'entirely unnecessary' to the judgment in the prior proceeding."  *Mills v. U.S. Bank*, 166 Cal. App. 4th 871, 896 (2008) (quoting *Lucido*, 51 Cal. 3d at 342).  The jury in the *Unlawful Detainer Action* made two findings: (1) Plaintiff committed a nuisance on the property (SSUF ¶ 29); and (2) there was no retaliatory motive in bringing the Unlawful Detainer Action (SSUF ¶ 30).  The verdict form did not ask the jury to decide whether Plaintiff was harassed (*see* NOL Ex. 21) and Defendants provide no evidence that the jury otherwise decided the issue of harassment.  Thus, the issue of harassment was "entirely unnecessary" to the judgment in the *Unlawful Detainer Action*.  Indeed, the jury could have concluded that Plaintiff was harassed, but that he nonetheless was a nuisance and/or that nonetheless his eviction was not

///

37

retaliatory.  The Court concludes that the issue of harassment was not "necessarily decided" in the *Unlawful Detainer Action*.

For these reasons, the Court DENIES Defendants' Motion regarding collateral estoppel/issue preclusion with respect to the *Unlawful Detainer Action*.

## VI.  CONCLUSION

Consistent with the foregoing, the Court DENIES the Motion as to retaliation as moot, and DENIES the Motion as to harassment.

DATED: November 3, 2021

_____
MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE